IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| THE URBAN HEALTH CARE COALITION, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civ. A. No. 06-2220 (RWR) |
| MICHAEL O. LEAVITT, Secretary, Department of Health and Human Services, | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S NOTICE OF SUPPLEMENTAL AUTHORITY**

Defendant respectfully submits this notice of supplemental authority to advise the Court

of the D.C. Circuit's issuance of its decision today in Public Citizen v. United States District

Court, No. 06-5232, --- F.3d  --- (May 29, 2007) (slip opinion attached).  With this decision, the

D.C. Circuit joins the host of other courts that have already rejected the argument made in Count

V of plaintiffs' complaint in the instant case, namely, that the Deficit Reduction Act of 2005 was

not validly enacted under the Bicameralism Clause, U.S. Const., art. I, § 7.  See Defendant's

Memorandum in Support of Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the

Alternative, for Failure to State a Claim, filed Feb. 27, 2007 (dkt. no. 8), at 31 n.22 (citing cases).

Plaintiffs previously conceded that the issue raised in their Count V is the same as that contained

in Public Citizen and that the D.C. Circuit's then-forthcoming decision in Public Citizen "will be

binding on this Court."  Plaintiffs' Opposition to Defendant's Motion to Dismiss for Lack of

Subject Matter Jurisdiction or, in the Alternative, Failure to State a Claim, filed Apr. 11, 2007

(dkt. no. 10), at 40.  Thus, Count V should be dismissed for the reasons previously argued, and

pursuant to binding Circuit precedent.

Dated: May 29, 2007

OF COUNSEL:

DANIEL MERON
General Counsel

KATHLEEN H. MCGUAN
Associated General Counsel

MARK D. POLSTON
Deputy Associate General Counsel
    for Litigation

SUSAN MAXSON LYONS
ROBERT W. BALDERSTON
Attorneys
Department of Health and Human Services

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

SHEILA M. LIEBER
Deputy Director
Federal Programs Branch

 /s/ Robert J. Katerberg
ROBERT J. KATERBERG
 (D.C. Bar No. 466325)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W., Room 6112
Washington, D.C. 20001
Telephone:    (202) 616-8298
Facsimile:    (202) 616-8460
Robert.Katerberg@usdoj.gov

Attorneys for Defendant

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 9, 2007          Decided May 29, 2007

No. 06-5232

PUBLIC CITIZEN,
APPELLANT

v.

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 06cv00523)

———

*Allison M. Zieve* argued the cause for appellant. With her on the briefs were *Adina H. Rosenbaum*, *Brian Wolfman*, and *Scott L. Nelson*.

*Martha Jane Perkins* was on the brief for *amici curiae* Representatives Henry R. Waxman, et al. in support of appellant urging reversal.

*Alisa B. Klein*, Attorney, U.S. Department of Justice, argued the cause for appellee. With her on the brief were *Peter D. Keisler*, Assistant Attorney General, *Jeffrey A. Taylor*, U.S. Attorney, *Jonathan F. Cohn*, Deputy Assistant Attorney

2

General, and *Mark B. Stern*, Attorney.  *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

*Michael F. Altschul* and *Helgi C. Walker* were on the brief for *amicus curiae* CTIA-The Wireless Association in support of appellee.

Before:  TATEL and GARLAND, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*:  Article I of the United States Constitution requires that before proposed legislation may "become[] a Law," U.S. CONST. art. I, § 7, cl. 2, "(1) a bill containing its exact text [must be] approved by a majority of the Members of the House of Representatives; (2) the Senate [must] approve[] precisely the same text; and (3) that text [must be] signed into law by the President," *Clinton v. City of New York*, 524 U.S. 417, 448 (1998).  Public Citizen, a not-for-profit consumer advocacy organization, filed suit in District Court claiming that the Deficit Reduction Act of 2005, Pub. L. No. 109-171, 120 Stat. 4 (2006) ("DRA" or "Act"), is invalid because the bill that was presented to the President did not first pass both chambers of Congress in the exact same form.  In particular, Public Citizen contends that the statute's enactment did not comport with the bicameral passage requirement of Article I, Section 7 of the Constitution, because the version of the legislation that was presented to the House contained a clerk's error with respect to one term, so the House and Senate voted on slightly different versions of the bill and the President signed the version passed by the Senate.  Public Citizen asserts that it is irrelevant that the Speaker of the House and the President pro tempore of the Senate both signed a version of the proposed legislation identical to the version signed by the President.  Nor does it matter, Public Citizen argues, that the

3

congressional leaders' signatures attest that indistinguishable legislative text passed both houses.

The District Court held that Public Citizen's bicameralism claim is foreclosed by the Supreme Court's decision in *Marshall Field & Co. v. Clark*, 143 U.S. 649 (1892). *See Public Citizen v. Clerk, U.S. Dist. Ct. for D.C.*, 451 F. Supp. 2d 109 (D.D.C. 2006). In that case, the Court held that the judiciary must treat the attestations of "the two houses, through their presiding officers" as "conclusive evidence that [a bill] was passed by Congress." *Marshall Field*, 143 U.S. 672-73. Under *Marshall Field*, a bill signed by the leaders of the House and Senate – an attested "enrolled bill" – establishes that Congress passed the text included therein "according to the forms of the Constitution," and it "should be deemed complete and unimpeachable." *Id.* at 672-73. Recognizing that *Marshall Field*'s "enrolled bill rule" prohibited it from questioning the congressional pedigree of the bill signed by the Speaker and President pro tempore, the District Court dismissed Public Citizen's complaint and denied its motion for summary judgment. *Public Citizen*, 451 F. Supp. 2d 109.

Public Citizen has appealed, arguing that while *Marshall Field* may prohibit the impeachment of an enrolled bill by reference to congressional journals, the decision does not bar a court from considering other evidence extrinsic to an enrolled bill. Public Citizen claims further that even if *Marshall Field* was not so restricted as originally decided, subsequent decisions of the Court have narrowed the enrolled bill rule. Appellee and CTIA – the Wireless Association ("CTIA"), appearing as *amicus curiae*, urge affirmance and contend that Public Citizen lacks standing to challenge the DRA.

We agree with the District Court that the enrolled bill rule of *Marshall Field* controls the disposition of this case. We therefore affirm the judgment of the District Court. We find it unnecessary to determine whether Public Citizen has standing

4

to bring suit, because we conclude that the *Marshall Field* rule of dismissal "represents the sort of 'threshold question' [that] . . . may be resolved before addressing jurisdiction." *Tenet v. Doe*, 544 U.S. 1, 6 n.4 (2005).

## I. BACKGROUND

### A. *"Engrossed Bills" and "Enrolled Bills" in the House and Senate*

Congress has established specific procedures governing passage of a bill:

> [1] Every bill . . . in each House of Congress shall, when such bill . . . passes either House, be printed, and such printed copy shall be called the engrossed bill . . . .

> [2] Said engrossed bill . . . shall be signed by the Clerk of the House or the Secretary of the Senate, and shall be sent to the other House, and in that form shall be dealt with by that House and its officers, and, if passed, returned signed by said Clerk or Secretary.

> [3] When such bill . . . shall have passed both Houses, it shall be printed and shall then be called the enrolled bill, . . . signed by the presiding officers of both Houses and sent to the President of the United States.

1 U.S.C. § 106. An "engrossed bill" is thus one that has passed one chamber of Congress, while an "enrolled bill" has passed both the House and the Senate.

### B. *Public Citizen's Challenge to the DRA*

On February 8, 2006, President Bush signed a budget bill known as the Deficit Reduction Act of 2005. In ten titles, the DRA amends a variety of familiar statutes, including the Federal Deposit Insurance Act, the Communications Act of 1934, and the Social Security Act. The provisions of the DRA are sweeping: the Act, *inter alia*, effects extensive changes to

5

Medicare and Medicaid laws, provides relief for victims of Hurricane Katrina, creates a program through which households may obtain coupons to defray the cost of digital-to-analog converter boxes for their televisions, and, significantly, for purposes of this law suit, amends the U.S. Code to increase the filing fee for civil actions in federal district courts from $250 to $350.

Approximately six weeks after the President signed the DRA, Public Citizen filed a complaint against the Clerk of the U.S. District Court for the District of Columbia ("Clerk"), arguing that as an organization that routinely files civil suits, it anticipated having to pay the $100 fee increase on a regular basis. Public Citizen asked the District Court to declare the Act unconstitutional and compel the Clerk to maintain the $250 filing fee.

The facts in this case are straightforward and largely undisputed. Nonetheless, on review of a motion to dismiss, we "must treat the complaint's factual allegations as true . . . and must grant [Public Citizen] the benefit of all inferences that can be derived from the facts alleged." *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003) (internal quotation marks omitted). We will therefore recite the facts underlying the complaint as they have been presented by Public Citizen.

According to the complaint, in the Fall of 2005, the House and Senate passed different versions of a budget bill referred to as S. 1932. To iron out the differences, the legislation was sent to a conference committee. The committee produced a conference report which failed to pass the Senate. Shortly thereafter the Senate passed an amended version of S. 1932 wherein § 5101 specified a 13-month duration of Medicare payments for certain durable medical equipment. However, when the Senate clerk transmitted the engrossed S. 1932 to the House, he mistakenly changed § 5101 of the bill to reflect a 36-

6

month duration of payments for durable medical equipment rather than the 13-month duration actually approved by the Senate. The House voted on this engrossed bill, including the erroneous duration figure. Because the legislation originated in the Senate, the House returned it to the Senate for enrollment. The Senate clerk, recognizing the transcription error in the engrossed bill, altered the text of the enrolled bill so that it included a 13-month rather than a 36-month duration. The version of the DRA signed by the presiding officers contains the 13-month figure. Thus, since the 13-month duration term in the enrolled bill passed the Senate but not the House, the President signed legislation that did not actually pass both houses of Congress in precisely the same form.

After filing its complaint, Public Citizen moved for summary judgment. The Clerk lodged a motion to dismiss the case under Federal Rule of Civil Procedure 12(b)(6). The District Court denied Public Citizen's motion and granted dismissal, concluding that even if it accepted Public Citizen's allegations as true, the bicameralism challenge still "must fail" under the enrolled bill rule of *Marshall Field*. *Public Citizen*, 451 F. Supp. 2d at 128. Public Citizen now appeals the dismissal of its complaint and denial of its motion for summary judgment.

## II.   ANALYSIS

### A.   *Standard of Review*

The District Court dismissed Public Citizen's complaint for failure to state a claim upon which relief may be granted, *see* FED. R. CIV. P. 12(b)(6), and denied its motion for summary judgment, *see* FED. R. CIV. P. 56. A dismissal for failure to state a claim under Rule 12(b)(6) is reviewed *de novo* – meaning that this court applies the same decisional principles as the District Courts. *See, e.g.*, *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1039-40 (D.C. Cir. 2003). A denial of a motion for

7

summary judgment typically is not a final order, so it is ordinarily not appealable. *See, e.g.*, *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 296 (D.C. Cir. 2006). However, an order denying a motion for summary judgment may be reviewed on appeal "where it is accompanied by a final order disposing of all issues before the district court." *Jones-Hamilton Co. v. Beazer Materials & Servs., Inc.*, 973 F.2d 688, 694 n.2 (9th Cir. 1992). We review a denial of summary judgment *de novo*. "The test to be applied in reviewing the grant or denial of a summary judgment motion is that summary judgment is proper only when there is no genuine issue of any material fact or when viewing the evidence and the inferences which may be drawn therefrom in the light most favorable to the adverse party, the movant is clearly entitled to prevail as a matter of law." *Pomerantz v. County of Los Angeles*, 674 F.2d 1288, 1290 (9th Cir. 1982) (internal quotation marks omitted).

**B.    *Standing and Other Threshold Issues***

The Clerk and CTIA contend that Public Citizen cannot meet the irreducible constitutional minimum of standing. Appellee's Br. at 30-32; Br. of Amicus Curiae at 19-27; *see Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (describing Article III standing requirements). In particular, CTIA argues that, "in addition to requiring injury-in-fact and causation, Article III obliges the plaintiff to establish that the alleged injury is judicially redressable. Because the putatively unconstitutional provision of the DRA can be severed from the concededly valid remainder of the Act, Public Citizen's grievance concerning increased filing fees simply would not be redressed by a favorable decision in this appeal." Br. of Amicus Curiae at 4 (citation omitted). The Clerk concurs in this view, Appellee's Br. at 30, but argues in the alternative that we may affirm without addressing standing, because *Marshall Field* erects a threshold

8

barrier to judicial inquiry, *id.* at 30 n.7. We agree that we may affirm without reaching the issue of standing.

In *Steel Co. v. Citizens for a Better Environment*, the Supreme Court held "that Article III jurisdiction is always an antecedent question" to be answered prior to any merits inquiry. 523 U.S. 83, 101 (1998). The Court emphasized that in order to dismiss a claim for failure "to state a cause of action" a court must have "*power* to adjudicate the case." *Id.* at 89. Therefore, such a dismissal cannot be issued "before resolving a dispute" concerning jurisdiction. *Id.* at 92. The Court noted, however, that in some cases involving "extraordinary procedural postures," *id.* at 98, federal courts have permissibly resolved the merits of a dispute without first addressing an outstanding jurisdictional question, *see id.* at 98-101. The Court added that some of these cases "must be acknowledged to have diluted the absolute purity of the rule that Article III jurisdiction is always an antecedent question." *Id.* at 101; *see also id.* at 110-11 ("[T]he Court's opinion should not be read as cataloging an exhaustive list of circumstances under which federal courts may exercise judgment in reserv[ing] difficult questions of . . . jurisdiction when the case alternatively could be resolved on the merits in favor of the same party.") (O'Connor, J., concurring) (internal quotation marks and citation omitted).

Further diluting the "purity of the rule that Article III jurisdiction is always an antecedent question," the Court in *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999), observed that

> [w]hile *Steel Co.* reasoned that subject-matter jurisdiction necessarily precedes a ruling on the merits, the same principle does not dictate a sequencing of jurisdictional issues. "[A] court that dismisses on . . . non-merits grounds such as . . . personal jurisdiction, before finding subject-matter jurisdiction, makes no assumption of law-declaring power that violates the separation of powers

9

> principles underlying . . . *Steel Company*." It is hardly
> novel for a federal court to choose among threshold grounds
> for denying audience to a case on the merits. Thus, as the
> Court observed in *Steel Co*., district courts do not overstep
> Article III limits when they decline jurisdiction of state-law
> claims on discretionary grounds without determining
> whether those claims fall within their pendent jurisdiction,
> or abstain . . . without deciding whether the parties present
> a case or controversy. . . .

*Id*. at 584-85 (internal citations omitted); *see also Seale v. INS*,
323 F.3d 150, 155 (1st Cir. 2003) ("Despite sweeping language
. . . *Steel Co*. does not, in all instances, create an absolute rule
against bypassing questions of a jurisdictional nature.").

Doubts about *Steel Co*.'s reach were significantly quelled
in *Tenet* when the Court held that a federal court is not obliged
to decide jurisdictional issues before certain nonjurisdictional
"rule[s] designed not merely to defeat the asserted claims, but to
preclude judicial inquiry." *Tenet*, 544 U.S. at 6 n.4. In *Tenet*,
the Court held that the *Totten v. United States*, 92 U.S. 105
(1875), rule of dismissal may be addressed before finding
jurisdiction. *Tenet*, 544 U.S. at 6 n.4. *Totten* involved a suit
brought by "a self-styled Civil War spy [against] . . . the United
States to enforce its obligations under their secret espionage
agreement." *Id.* at 3. The Court concluded that "public policy
forb[ids]" such a suit, *id.*, since "[e]ven a small chance that some
court will order disclosure of a source's identity could well
impair intelligence gathering and cause sources to close up like
a clam," *id.* at 11 (internal quotation marks omitted). When two
alleged Cold War spies brought a similar suit, the *Tenet* Court
held that "the *Totten* rule of dismissal . . . represents the sort of
'threshold question' [that] . . . may be resolved before
addressing jurisdiction," explaining that "[i]t would be
inconsistent with the unique and categorical nature of the *Totten*
bar – a rule designed not merely to defeat the asserted claims,

10

but to preclude judicial inquiry – to first allow discovery or other proceedings in order to resolve the jurisdictional question." *Id.* at 6 n.4.

Justice Scalia joined the majority but wrote separately to emphasize his belief that *Tenet* does not broaden *Steel Co.*  He argued that when the majority opinion

> describes "the unique and categorical nature of the *Totten* bar . . . ," it is assuredly not describing the mere everyday absence of a cause of action.  As applied today, the bar of *Totten* is a jurisdictional one.

> Of course even if it were not, given the squarely applicable precedent of *Totten*, the absence of a cause of action is so clear that [the] claims are frivolous – establishing another *jurisdictional* ground for dismissal that the *Steel Co.* majority opinion acknowledges.

*Id.* at 12 (Scalia, J., concurring) (internal citation omitted).  Although the majority opinion does not say explicitly whether *Totten* erects a "jurisdictional" bar, it does state that the rule stems from public policy concerns without mentioning Article III limitations.  More significantly, the *Tenet* Court phrases its holding in terms that undermine Justice Scalia's contention: "[T]he *Totten* rule of dismissal . . . represents the sort of 'threshold question' [that] . . . may be resolved *before addressing jurisdiction*."  *Id.* at 6 n.4 (emphasis added).

Any remaining doubt as to whether a federal court may, in appropriate circumstances, dismiss a case on prudential grounds prior to establishing its jurisdiction was put to rest in *Sinochem International Co. v. Malaysia International Shipping Corp.*, 127 S. Ct. 1184 (2007).  In *Sinochem*, the Supreme Court applied *Tenet* to another rule of dismissal "designed . . . to preclude judicial inquiry."  *Tenet*, 544 U.S. at 6 n.4.  The Court held that "a district court has discretion to respond at once to a . . . *forum non conveniens* plea, and need not take up first any other

11

threshold objection [such as] . . . whether it has authority to adjudicate the cause." *Sinochem*, 127 S. Ct. at 1188. Since dismissal pursuant to the *forum non conveniens* doctrine – like a *Totten* dismissal – "den[ies] audience to a case on the merits," the Court reasoned, it "does not entail any assumption . . . of substantive 'law-declaring power.'" *Id.* at 1191-93 (quoting *Ruhrgas*, 526 U.S. at 584-85). No one would contend that *forum non conveniens* constitutes a jurisdictional ground for dismissal. Indeed, the *Sinochem* decision refers to a district court's "discretion to" dismiss pursuant to the doctrine. *Id.* at 1188. *Sinochem* thus firmly establishes that certain non-merits, nonjurisdictional issues may be addressed preliminarily, because "'[j]urisdiction is vital only if the court proposes to issue a judgment on the merits.'" *Id.* at 1191-92 (quoting *Intec USA, LLC v. Engle*, 467 F.3d 1038, 1041 (7th Cir. 2006)).

There are two lines of analysis pursuant to which it might be argued that *Marshall Field*'s enrolled bill rule creates a "jurisdictional" bar. First, because the Court based its holding in part upon separation of powers concerns, *see Marshall Field*, 143 U.S. at 673, the rule could be viewed as an application of the political question doctrine which is derived from Article III's "controversy" requirement, *Massachusetts v. EPA*, 127 S. Ct. 1438, 1452 (2007). *See Baker v. Carr*, 369 U.S. 186, 214-15 (1962) (describing *Marshall Field* as involving considerations similar to those in *Coleman v. Miller*, 307 U.S. 433 (1939), which were "committed to congressional resolution" and based on "criteria of decision that necessarily escape[] the judicial grasp"); *Metzenbaum v. FERC*, 675 F.2d 1282, 1287 (D.C. Cir. 1982) (per curiam) (citing *Marshall Field* as an application of the political question doctrine); *see also United States v. Sitka*, 845 F.2d 43, 46 (2d Cir. 1988) ("Another doctrine closely related to – if not inherent in – the political question doctrine is the so-called 'enrolled bill rule.'"); *United States v. Stahl*, 792 F.2d 1438, 1440-41 (9th Cir. 1986) (characterizing extension of the enrolled bill rule as an application of the political question

12

doctrine).  *But see INS v. Chadha*, 462 U.S. 919, 943 (1983)
(describing *Marshall Field* as "address[ing] and resolv[ing] the
question whether" an attested enrolled bill does not become a
law if it has not in fact been passed by Congress); *cf. Vander
Jagt v. O'Neill*, 699 F.2d 1166, 1170 (D.C. Cir. 1983) (clarifying
prudential nature of abstention in case challenging committee
seat distribution).  Second, because the enrolled bill rule
foreordains the failure of Public Citizen's challenge, *Marshall
Field* also could be seen as depriving the courts of subject matter
jurisdiction with respect to claims that are "so . . . foreclosed by
prior decisions of [the Supreme] Court . . . as not to involve a
federal controversy."  *Steel Co.*, 523 U.S. at 89 (internal
quotation marks omitted).

In any event, the *Marshall Field* rule most certainly falls
within the ambit of *Tenet* and *Sinochem*.  The District Court
"assume[d] without deciding that [the Clerk's] motion to dismiss
. . . [was] properly made pursuant to [Rule] 12(b)(6)," since it
concluded that "the label applied d[id] not affect [its] analysis or
outcome."  *Public Citizen*, 451 F. Supp. 2d at 113 n.9.  But the
enrolled bill rule does not authorize a merits dismissal for failure
to state a claim.  Rather, like the *Totten* rule of dismissal and
*forum non conveniens*, the enrolled bill rule is "designed not
merely to defeat the asserted claims, but to preclude judicial
inquiry," *Tenet*, 544 U.S. at 6 n.4.  Where an attested enrolled
bill exists, a court must dismiss prior to adjudicating a
bicameralism challenge, "'denying audience to [the] case on the
merits,'" *Sinochem*, 127 S. Ct. at 1191 (quoting *Ruhrgas*, 526
U.S. at 585).  At a minimum, the *Marshall Field* rule is thus a
non-merits threshold ground for dismissal.  We therefore need
not decide whether the enrolled bill rule creates a jurisdictional
bar.  Nor is it necessary for us to determine whether Public
Citizen lacks standing.  Accordingly, we will  proceed directly
to *Marshall Field* dismissal.

13

## C. *The Enrolled Bill Rule*

### 1. Marshall Field *Squarely Applies*

In *Marshall Field*, importers protesting duties levied against them sought to have the Tariff Act of 1890 declared unconstitutional. 143 U.S. at 662-69. According to the importers, even though the Speaker of the House and the President of the Senate had endorsed the bill as having passed the bodies over which they presided, "it [was] shown by the Congressional record of proceedings, reports of committees of each house, reports of committees of conference, and other papers printed by authority of Congress" that part of the bill passed was missing in the version enrolled. *Id.* at 668-69. The importers argued that the Journal Clause, *see* U.S. CONST. art. I, § 5, cl. 3 ("Each House shall keep a Journal of its Proceedings, and from time to time publish the same, excepting such Parts as may in their Judgment require Secrecy; and the Yeas and Nays of the Members of either House on any question shall, at the Desire of one fifth of those Present, be entered on the Journal."), enshrines congressional journals – not the enrolled bill – as "the best, if not conclusive, evidence upon the issue as to whether a bill was, in fact, passed by the two houses of Congress." *Marshall Field*, 143 U.S. at 670.

The Court rejected this interpretation of the bicameral passage requirement, holding that the object of the Journal Clause is to ensure transparency in legislative activities, not to "prescribe the mode in which the fact of the original passage of a bill by the House of Representatives and the Senate shall be authenticated, or preclude Congress from adopting any mode to that end which its wisdom suggests." *Id.* at 670-71. Recognizing that Congress had long chosen signing of the enrolled bill by the presiding members of both houses as its method of authentication, the Court held that "the judicial department [must] act upon that assurance, and . . . accept, as

14

having passed Congress, all bills authenticated in the manner stated." *Id.* at 671-72.

The *Marshall Field* Court rested this conclusion upon two rationales. First, the Court reasoned by reference to public policy:

> [W]e cannot be unmindful of the consequences that must result if this court should feel obliged, in fidelity to the Constitution, to declare that an enrolled bill, on which depend public and private interests of vast magnitude, and which has been authenticated by the signatures of the presiding officers of the two houses of Congress, and by the approval of the President, and been deposited in the public archives, *as an act of Congress*, was not in fact passed by the House of Representatives and the Senate, and therefore did not become a law.

*Id.* at 670.

> Better, far better, that a provision should occasionally find its way into the statute through mistake, or even fraud, than that every act . . . should at any and all times be liable to be put in issue and impeached . . . . Such a state of uncertainty in the statute laws of the land would lead to mischiefs absolutely intolerable.

*Id.* at 675 (internal quotation marks omitted); *see also id.* at 676. Second, the Court based its holding on separation of powers concerns, citing "the respect due to a coördinate branch of the government." *Id.* at 673; *see also id.* at 676-77 (explaining that "the spectacle of examination of [congressional proceedings by the courts]" would "*subordinate*[] the legislature and disregard[] that coequal position in our system of the three departments of government" (internal quotation marks omitted)).

The Court crafted a clear rule: "[I]t is not competent for [a party raising a bicameralism challenge] to show, from the

15

journals of either house, from the reports of committees or from other documents printed by authority of Congress, that [an] enrolled bill" differs from that actually passed by Congress. *Id.* at 680. The only "evidence upon which a court may act when the issue is made as to whether a bill . . . asserted to have become a law, was or was not passed by Congress" is an enrolled act attested to by declaration of "the two houses, through their presiding officers." *Id.* at 670, 672. An enrolled bill, "thus attested," "is conclusive evidence that it was passed by Congress." *Id.* at 672-73. "[T]he enrollment itself is the record, which is conclusive as to what the statute is . . . ." *Id.* at 675 (internal quotation marks omitted).

In the case at bar, the record contains a copy of the DRA bearing the signatures of then Speaker of the House of Representatives Dennis Hastert and President pro tempore of the Senate Ted Stevens. Where such an attested enrolled bill exists, *Marshall Field* requires "the judicial department to act upon that assurance, and to accept [the bill] as having passed Congress." *Id.* at 672. Even if "the Congressional record of proceedings, reports of committees of each house, reports of committees of conference, and other papers printed by authority of Congress," *id.* at 668-69, indicate that the House voted to enact a 36-month duration of Medicare payments for certain durable medical equipment while the Senate passed a 13-month figure, the courts are barred from considering this extrinsic evidence. The District Court therefore correctly dismissed Public Citizen's complaint pursuant to the enrolled bill rule.

2.  *Public Citizen's Attempts to Distinguish and Narrow* Marshall Field

Public Citizen admits that the importers in *Marshall Field* "offered exhibits other than the journals, such as excerpts from the Congressional Record" and acknowledges the Court's references to "reports of committees [and] other documents printed by authority of [C]ongress." Appellant's Br. at 24-25.

16

But Public Citizen argues that since the importers primarily relied upon congressional journals and "journals are the only evidence discussed" at length in the opinion, the *Marshall Field* Court's expansive statements regarding the conclusive nature of the enrolled bill constitute "dicta going beyond what was necessary to decide the case" and the decision should be read to hold only that as between journals and an enrolled bill, the enrolled bill is the superior evidence. *Id.* at 21-25.

We easily reject this attempt to distinguish *Marshall Field* as a case concerned solely with congressional journals. As noted above, the Court first held that "the enrollment itself is the record, which is conclusive as to what the statute is," and it cannot be impeached by other materials. *Marshall Field*, 143 U.S. at 675 (internal quotation marks omitted). The Court then confirmed that "it is not competent for the appellants to show, from the journals of either house, from the reports of committees *or from other documents printed by authority of Congress*, that the enrolled bill . . . as finally passed, contained a section that does not appear in the enrolled act." *Id.* at 680 (emphasis added).

Nothing in the *Marshall Field* opinion purports to limit application of the enrolled bill rule to journal-based challenges. And neither of the Court's rationales applies solely to impeachment by journals. No less "uncertainty in the statute laws" upon which "depend public and private interests of vast magnitude," *id.* at 670, 675 (internal quotation marks omitted), would result from allowing collateral attack of the enrolled bill by congressional documents other than journals. And "the spectacle of examination of journals by [the courts]" no more "subordinates the legislature," *id.* at 676-77 (internal quotation marks and emphasis omitted), than does inspection of other materials. *Marshall Field*'s plain language and justification cannot be read to create a rule of dismissal limited to the claims

17

of plaintiffs who rely primarily upon journals to rebut an attested enrolled bill.

Public Citizen also contends that even if *Marshall Field* was not so restricted as originally decided, subsequent precedent has narrowed its holding. We view the legal landscape quite differently. First, the Supreme Court has applied the enrolled bill rule, *see Harwood v. Wentworth*, 162 U.S. 547, 562 (1896) (taking attested enrolled bill of Arizona legislature "to have been enacted in the mode required by law, and to be unimpeachable"), and extended *Marshall Field*'s holding to claims challenging state ratification of constitutional amendments, *see Leser v. Garnett*, 258 U.S. 130, 137 (1922) ("As the Legislatures of Tennessee and of West Virginia had power to [ratify the Nineteenth Amendment], official notice to the Secretary [of State], duly authenticated, that they had done so was conclusive upon him, and, being certified to by his proclamation, is conclusive upon the courts."); *cf. Sitka*, 845 F.2d at 46-47 (same where Sixteenth Amendment was challenged); *Stahl*, 792 F.2d at 1440-41 (same); *United States v. Thomas*, 788 F.2d 1250, 1253-54 (7th Cir. 1986) (same).

Furthermore, the Courts of Appeals have consistently invoked *Marshall Field* in refusing to conduct other inquiries "into the internal governance of Congress." *Mester Mfg. Co. v. INS*, 879 F.2d 561, 571 (9th Cir. 1989); *see, e.g., United States v. Campbell*, No. 06-3418, 2007 WL 1028785, at *1 (7th Cir. Apr. 3, 2007) (unpublished order) ("Campbell proposes to argue that 18 U.S.C. § 3231, which gives district judges jurisdiction to hear criminal prosecutions, has no legal effect because the House and Senate did not vote on it in the same session of Congress. . . . The enrolled bill rule prevents looking behind laws in th[at] way . . . ."); *Mester Mfg.*, 879 F.2d at 570-71 (holding that "[i]n the absence of express constitutional direction, [the courts must] defer to the reasonable procedures Congress has ordained for its internal business" where an

18

employer "assert[ed] that [the Immigration Reform and Control Act of 1986] is entirely null and void, as unconstitutionally passed . . . because Congress has no constitutional authority to present a bill after adjournment *sine die*"); *Gibson v. Anderson*, 131 F. 39, 42-43 (9th Cir. 1904) ("The appellant cannot go behind the authenticated published statutes of the United States, and show that an act which purports to have been approved on a certain date was in fact approved on a different date."); *cf. Am. Fed'n of Gov't Employees v. United States*, 330 F.3d 513, 522 (D.C. Cir. 2003) (rejecting the argument that a statute may only be supported by a rational basis included in congressional papers and citing *Marshall Field* for the proposition that "Congress has broad discretion in determining what must be published in the official record").

Finally, the Supreme Court recently reaffirmed *Marshall Field* in a case clarifying the limits of the enrolled bill rule:

> [T]he *Marshall Field* doctrine does not preclude us from asking whether the statute means something other than what the punctuation dictates. . . . The *Marshall Field* doctrine concerns the nature of the evidence the Court [may] consider in determining whether a bill had actually passed Congress; it places no limits on the evidence a court may consider in determining the meaning of a bill that has passed Congress.

*U.S. National Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455 n.7 (1993) (internal quotation marks and citation omitted); *cf. United States v. Pabon-Cruz*, 391 F.3d 86, 99-100 (2d Cir. 2004) (finding *Marshall Field* irrelevant where the court's "task . . . [was] not to doubt the accuracy or validity of [a bill's] language, but merely to determine what Congress intended by it"); *Cherry v. Steiner*, 716 F.2d 687, 693 (9th Cir. 1983) ("The enrolled bill doctrine . . . forestall[s] judicial inquiry into procedural irregularities occurring prior to the enactment of bills, not inherent defects in bills as enrolled.").

19

Even in the face of this evidence, Public Citizen argues that "there can be no question that courts may look behind an enrolled bill to assess whether a law was passed." Appellant's Br. at 10. Appellant rests this claim on the concluding sentence of an oblique footnote in *United States v. Munoz-Flores*, 495 U.S. 385 (1990), *see id.* at 391 n.4, a case decided three years prior to the Court's reaffirmance of *Marshall Field* in *U.S. National Bank of Oregon*.

In *Munoz-Flores*, a Magistrate ordered the defendant to pay a special assessment for each federal misdemeanor to which he pled guilty. 495 U.S. at 388. Munoz-Flores argued that the statute authorizing such assessments "was passed in violation of the Origination Clause" which "mandates that '[a]ll Bills for raising Revenue shall originate in the House of Representatives.'" *Id.* at 387-88 (quoting U.S. CONST. art. I, § 7, cl. 1). In an earlier Origination Clause decision, the Court avoided determining whether the enrolled bill rule applies to such challenges by first concluding that the act before it was "clearly not a revenue bill." *See Twin City Bank v. Nebeker*, 167 U.S. 196, 200-03 (1897). Although the *Munoz-Flores* Court likewise ultimately decided that the bill at issue "was not one for raising revenue" and therefore found "consideration of [the] origination question unnecessary," 495 U.S. at 401 (internal quotation marks omitted), it first addressed justiciability. The Court framed its holding that Munoz-Flores' claim was justiciable in terms of the traditional political question doctrine under *Baker v. Carr*, never mentioning *Marshall Field* in the text of its opinion. *Id.* at 389-96.

Justice Scalia disagreed with the Court's justiciability determination, stating that the *Marshall Field* "principle, if not the very same holding, [led him] to conclude that federal courts should not undertake an independent investigation into the origination of [a] statute . . . [where] . . . [t]he designation 'H. J. Res.' (a standard abbreviation for 'House Joint Resolution')

20

attests that the legislation originated in the House." *Id.* at 408-10 (Scalia, J., concurring in the judgment). The *Munoz-Flores* Court responded in a footnote:

> JUSTICE SCALIA . . . contends that Congress' resolution of the constitutional question in passing the bill [with an "H. J. Res." designation] bars this Court from independently considering that question. The only case he cites for his argument is *Marshall Field . . . .* But *Field* does not support his argument. That case concerned "the nature of the evidence" the Court would consider in determining whether a bill had actually passed Congress. . . . The Court rejected [the importers'] interpretation of the Journal Clause, holding that the Constitution left it to Congress to determine how a bill is to be authenticated as having passed. In the absence of any constitutional requirement binding Congress, we stated that "[t]he respect due to coequal and independent departments" demands that the courts accept as passed all bills authenticated in the manner provided by Congress. Where, as here, a constitutional provision *is* implicated, *Field* does not apply.

*Id.* at 391 n.4 (internal citations omitted).

Public Citizen reads the last lines of this footnote to effectively distinguish between Journal Clause challenges on one hand and Origination Clause and Bicameralism Clause challenges on the other:

> The distinction made . . . is between requirements with respect to the enactment of laws and requirements that do not affect valid enactment. Thus, for example, the Constitution requires Congress to keep journals, but neither the Constitution nor any statute conditions the enactment of laws on the keeping of journals or imposes requirements on the content of journals. Accordingly, as in *Marshall Field*, the content of congressional journals cannot be used to

21

impeach the validity of an enrolled bill that has been signed
. . . .  On the other hand, the Constitution requires that
legislation to raise revenue originate in the House.
Therefore, as in *Munoz-Flores*, the courts may look beyond
an enrolled bill to determine whether a law has been passed
in accordance with that constitutional condition . . . .

At issue in this case is another requirement for the valid
enactment of law – the requirement that identical legislation
be passed in both the House and the Senate before it is
presented to the President for his signature.  In accordance
with both *Munoz-Flores* and *Marshall Field*, the Court can
and should examine the evidence that this requirement has
been violated.

Appellant's Br. at 10-11.

Public Citizen's attempt to square the *Munoz-Flores*
footnote with Court precedent fails.  In assessing appellant's
claim, it is important to recall that *Munoz-Flores* did not in any
way involve the question raised in *Marshall Field*, *i.e.*, whether
an authenticated enrolled bill had passed Congress.  The
question instead was whether a provision that unquestionably
had passed Congress constituted a bill for raising revenue.  It is
not plausible to think that the Court meant to overrule the
enrolled bill rule in the last two sentences of an obscure footnote
in a case that did not involve an application of the rule.  Under
Public Citizen's interpretation, the *Munoz-Flores* Court
overruled the time-tested *Marshall Field* decision *sub silento* in
a footnote, and then three years later inadvertently referenced
the purportedly defunct rule in *U.S. National Bank of Oregon*.
*See* 508 U.S. at 455 n.7.  The argument collapses under its own
weight.

The last two sentences of the cited footnote in *Munoz-
Flores* defy easy comprehension.  Nonetheless, the text of the
footnote is clear on one point:  the Court did not mean to

22

overturn or modify the enrolled bill rule of *Marshall Field*. The Court's footnote in *Munoz-Flores* clearly states that "[t]he respect due to coequal and independent departments demands that the courts accept as passed all bills authenticated in the manner provided by Congress." 495 U.S. at 392 n.4 (internal quotation marks omitted). The Court then says: "Where . . . a constitutional provision *is* implicated, *Field* does not apply." *Id.* In other words, *Marshall Field does* apply in a case of the sort at hand, where the court must "accept as passed [the bill] authenticated in the manner provided by Congress." *Id.* There is nothing in the footnote to indicate that the Court meant to distinguish between challenges arising under the Journal Clause as opposed to challenges arising under the Origination Clause and Bicameralism Clause, as Public Citizen suggests. Indeed, the footnote appears unambiguous in reaffirming that there can be no Bicameralism Clause challenge when a bill has been authenticated in the manner provided by Congress. The text of the footnote may be less than carefully crafted, but it does not admit of the strained construction offered by appellant.

Even more problematic for Public Citizen is that, given our finding that *Marshall Field* has not been overturned or modified by *Munoz-Flores*, there can be no doubt that the application of appellant's theory to the case at bar is positively foreclosed by *Marshall Field*. The decision in *Marshall Field* addressed a bicameralism challenge, so for us to embrace Public Citizen's argument that the enrolled bill rule does not apply to "requirement[s] for the valid enactment of law," such as the Bicameralism Clause, would be tantamount to narrowing *Marshall Field* entirely out of existence. Public Citizen's claim that *Marshall Field* involved only a Journal Clause challenge and no bicameralism challenge is belied by the facts of that case. Although the importers sought support from the Journal Clause in their attempt to impeach the attested enrolled bill, they advanced a Bicameralism Clause challenge, just as Public Citizen does.

23

We acknowledge that the language of the *Munoz-Flores* footnote is cumbersome, making it difficult to discern precisely what the Court meant to say. The footnote indicates that the "H. J. Res." moniker does not carry the conclusive weight in the Origination Clause context that the signatures of the presiding officers command in the Bicameralism Clause context. In the text of its decision, the *Munoz-Flores* Court stated that adjudication of an Origination Clause challenge despite the existence of an "H. J. Res." designation no more "express[es] a lack of respect for the House of Representatives" than does any other constitutional challenge. *Id.* at 390-91 (internal quotation marks and alteration omitted). In light of this conclusion, the *Munoz-Flores* footnote might be seen as a simple attempt, in response to Justice Scalia's contention to the contrary, to distinguish Origination Clause challenges from Bicameralism Clause challenges based on the lesser applicability of the separation of powers rationale in the former context. This is hardly a satisfying explanation, however. Alternatively, the footnote might be viewed as an *ex post* interpretation of *Marshall Field*. In other words, if in the post-*Marshall Field* legal landscape any bicameralism challenge made in the face of an attested enrolled bill really raises no constitutional claim, the *Munoz-Flores* Court could have – with perfect hindsight – treated the claim in *Marshall Field* itself as similarly implicating no constitutional provision. This makes some sense. We need not resolve the puzzle of the footnote, however, because we are satisfied that the Court's decision in *Munoz-Flores* does not purport to overrule or modify the enrolled bill rule.

At bottom, Public Citizen asks that we set aside directly controlling Supreme Court precedent in favor of an ambiguous footnote. Public Citizen attempts to alter the balance, arguing that the engrossed bill it proffers as evidence that the House passed a 36-month duration figure is a "public record" far more reliable than journals and one given "official status" when Congress adopted 1 U.S.C. § 106 after the Court decided

24

*Marshall Field*.  Appellant's Br. at 31-34.  But this is beside the point, because the argument in no way undercuts the public policy and separation of powers rationales that undergird the enrolled bill rule.  One need only look to the breadth of the DRA to understand the "vast magnitude" of "public and private interests" which depend upon the certainty of statutes.  *Marshall Field*, 143 U.S. at 670.  And today, no less than in 1892, the spectacle of courts directing legislative authentication procedures and otherwise meddling in the inner workings of Congress "disregards that coequal position . . . of the three [branches] of government."  *Id.* at 676 (internal quotation marks omitted).

The Supreme Court has repeatedly cautioned that we "should [not] conclude [that its] more recent cases have, by implication, overruled an earlier precedent."  *Agostini v. Felton*, 521 U.S. 203, 237 (1997).  Therefore, even if we were inclined to think that the *Munoz-Flores* footnote offers some *implicit* support for Public Citizen's position – and we are not – this would not change the outcome that we reach today.  The District Court correctly decided that the enrolled bill rule governs the disposition of this case.

### III.  CONCLUSION

For the reasons set forth above, we affirm the judgment of the District Court.

*So ordered*.