UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                )
URBAN HEALTH CARE                )
COALITION, et al.,               )
                                 )
         Plaintiffs,             )
                                 )
         v.                      )    Civil Action No. 06-2220 (RWR)
                                 )
KATHLEEN SEBELIUS,               )
                                 )
         Defendant.              )
_____ )
```

<u>MEMORANDUM OPINION</u>

Plaintiffs Urban Health Care Coalition and fifteen hospitals, medical centers, and health systems (referred to collectively as "the Hospitals") have sued the Secretary of the Department of Health and Human Services[1] seeking to enjoin the Secretary from enforcing § 6085 of the Deficit Reduction Omnibus Act of 2005 ("DRA"), codified at 42 U.S.C. § 1396u-2(b)(2)(D), arguing that § 6085 does not apply to Pennsylvania's Medicaid system and is unconstitutional. The Secretary moves to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Because the Hospitals do not have standing, the complaint will be dismissed for lack of subject matter jurisdiction.

_____

[1] Kathleen Sebelius is substituted as the defendant under Fed. R. Civ. P. 25(d).

-2-

BACKGROUND

The Hospitals sue the Secretary, challenging the constitutionality of § 6085 and its applicability to Pennsylvania.  In Pennsylvania, Medicaid enrollees can obtain medical services through the state's fee for service ("FFS") program.  In the FFS program, service providers, such as the Hospitals, enter into participation agreements with the Pennsylvania agency that oversees Medicaid.  The Hospitals all participate in Medicaid and the payments from the FFS program are "below the hospitals' actual costs of providing hospital services."  (Am. Compl. ¶¶ 3, 31.)

In addition to the FFS program, Pennsylvania has a managed care program through which it contracts with managed care organizations ("MCOs").  The MCOs provide services to Medicaid enrollees through contracts with "a 'network' of physicians, hospitals[,] and other in-plan medical service providers."  (Id. ¶¶ 34, 40.)  For the same services, the Hospitals generally receive higher payments from their contracts with MCOs than from the FFS program.  (Id. ¶ 75.)  However, even if the Hospitals are not providers under contract with a particular MCO, the Hospitals are required by federal law to provide emergency medical services ("EMS") to all Medicaid patients who are in that MCO.  (Id. ¶ 62.)  Before January 1, 2007, the Hospitals provided EMS to such Medicaid patients and billed those patients' MCOs for "all

-3-

reasonably necessary costs," as required by 40 Pa. Cons. Stat.

§ 991.2116.[2]  (Id. ¶ 78 (internal quotation marks omitted).)

These rates under § 991.2116 were higher than the FFS rates.

(Id. ¶ 79.)  Section 6085 changed the Hospitals' payments from

MCOs with whom the Hospitals had not contracted by preempting

§ 991.2116.  (Id. ¶ 81.)  Section 6085 states, in relevant part,

that

> [a]ny provider of emergency services that does not have
> in effect a contract with a Medicaid managed care
> entity that establishes payment amounts for services
> furnished to a beneficiary enrolled in the entity's
> Medicaid managed care plan must accept as payment in
> full no more than the amounts (less any payments for
> indirect costs of medical education and direct costs of
> graduate medical education) that it could collect if
> the beneficiary received medical assistance under this
> subchapter other than through enrollment in such an
> entity.

42 U.S.C. § 1396u-2(b)(2)(D).  Section 6085 requires the

Hospitals not under contract with an EMS patient's MCO to forego

the higher payments under Pennsylvania's "all reasonably

necessary costs" standard and instead accept payments based on

_____

[2] Under Pennsylvania law,

> [i]f an enrollee seeks emergency services and the
> emergency health care provider determines that
> emergency services are necessary, the emergency health
> care provider shall initiate necessary intervention to
> evaluate and, if necessary, stabilize the condition of
> the enrollee without seeking or receiving
> authorization from the managed care plan.  The managed
> care plan shall pay all reasonably necessary costs
> associated with the emergency services provided during
> the period of the emergency.

40 Pa. Cons. Stat. § 991.2116.

-4-

Pennsylvania's FFS rates.  (Am. Compl. ¶¶ 90-92.)  The Hospitals complain that this shifts the financial burden from the MCOs to the Hospitals as the FFS rates for EMS are below cost, and affects the Hospitals' "ability to negotiate fair rates of payment from MCOs" in the future.  (Id. ¶¶ 102, 105-106.)  After Congress enacted the DRA, the Director of the Centers for Medicare and Medicaid Services ("CMS"), an agency within the Department of Health and Human Services, sent a letter to state Medicaid agencies advising them that they must amend their contracts with MCOs to comply with the new limitation of § 6085 and that the Hospitals must accept the FFS rates as payment in full.  (Pls.' Corrected Opp'n to Def.'s Mot. to Dismiss ("Pls.' Opp'n"), Ex. B at 1.)

The Hospitals seek to enjoin the Secretary from enforcing § 6085 against them, arguing that the statute does not apply to Pennsylvania and is unconstitutional as applied because it violates the takings clause, due process rights, and equal protection under the law.[3]  (Am. Compl. ¶¶ 8, 127, 137, 144, 154.)  The Secretary has moved to dismiss, arguing that there is

---

[3] The Hospitals also argue that § 6085 is unconstitutional because the DRA was not validly enacted due to a violation of the bicameralism clause.  However, the D.C. Circuit has concluded that Congress validly passed the DRA.  See Pub. Citizen v. U.S. Dist. Court for the Dist. of Columbia, 486 F.3d 1342, 1350 (D.C. Cir. 2007) (applying the enrolled bill rule and finding that "[w]here such an attested enrolled bill exists, . . . 'the judicial department [shall] act upon that assurance, and . . . accept [the bill] as having passed Congress").

-5-

no subject matter jurisdiction over the Hospitals' claim and that the complaint fails to state a claim upon which relief can be granted. (Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem.") at 11, 26.)

## DISCUSSION

A federal court should first determine that it has jurisdiction over a case before ruling on the merits. Al-Zahrani v. Rodriguez, 669 F.3d 315, 317-18 (D.C. Cir. 2012); Moms Against Mercury v. Food & Drug Admin., 483 F.3d 824, 826 (D.C. Cir. 2007) ("In every case, the jurisdictional requirements of Article III must be present before a court may proceed to the merits."); but see Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430-32 (2007) (distinguishing between proceeding to the merits and proceeding to threshold issues such as abstention, forum non conveniens, and prudential standing). "On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction." Larsen v. U.S. Navy, 486 F. Supp. 2d 11, 18 (D.D.C. 2007). "Because subject-matter jurisdiction focuses on the court's power to hear the claim, . . . the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim." Jin v. Ministry of State Sec., 475 F. Supp. 2d 54, 60

(D.D.C. 2007).  The court may look beyond the complaint, but
"must accept as true the allegations in the complaint and
consider the factual allegations of the complaint in the light
most favorable to the non-moving party."  Short v. Chertoff, 526
F. Supp. 2d 37, 41 (D.D.C. 2007).  See also Nat'l Ass'n of Home
Builders v. U.S. Army Corps of Eng'rs, 539 F. Supp. 2d 331, 337
(D.D.C. 2008) (stating that "the court is not limited to the
allegations contained in the complaint" and can consider other
undisputed facts on the record).

     "[A] showing of standing is an essential and unchanging
predicate to any exercise of [a court's] jurisdiction."  Fla.
Audubon Soc'y v. Bentsen, 94 F.3d 658, 663 (D.C. Cir. 1996)
(internal quotation marks omitted).  In order for a plaintiff to
establish standing to bring a constitutional claim, Article III
requires that the plaintiff demonstrate (1) that he has suffered
"an injury in fact" that is "(a) concrete and particularized and
(b) actual and imminent, not conjectural or hypothetical," (2)
that there exists "a causal connection between the injury and the
conduct complained of," that is, that the injury is "fairly
traceable to the challenged action of the defendant," and (3)
that it is "likely, as opposed to merely speculative, that the
injury will be redressed by a favorable decision."  Lujan v.
Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (internal
quotation marks and citations omitted).

-7-

I.   INJURY-IN-FACT

An injury in fact is "an invasion of a legally protected interest[.]"  <u>Lujan</u>, 504 U.S. at 560 (internal quotation marks and citations omitted).  At the pleading stage, the "general factual allegations of injury resulting from the defendant's conduct may suffice," since on a motion to dismiss, a court presumes "that general allegations embrace those specific facts that are necessary to support the claim."  <u>Bennett v. Spear</u>, 520 U.S. 154, 168 (1997) (internal quotation marks omitted).  Here, the Hospitals allege that § 6085 reduces their reimbursements for non-contracted EMS from the level at which they would otherwise be entitled to be paid under Pennsylvania law.  (Pl.'s Opp'n at 8.)  This constitutes a concrete, actual harm to the Hospitals' financial interests and is sufficient to satisfy the requirement of injury in fact.  <u>See</u> <u>Andrews v. U.S. Dep't of Health and Human Srvcs.</u>, Civil Action No. 04-307 (JR), 2005 WL 4826342, at *2 (Apr. 13, 2005) ("Economic injury may amount to injury-in-fact for standing purposes.").

II.   CAUSATION

"In applying the causation test, . . . 'fair traceability turns on the causal nexus between the agency action and the asserted injury.'"  <u>Humane Soc'y of U.S. v. Babbitt</u>, 46 F.3d 93, 100 (D.C. Cir. 1995) (quoting <u>Freedom Republicans, Inc. v. FEC</u>, 13 F.3d 412, 418 (D.C. Cir. 1994)).  The plaintiff "need not

prove a cause-and-effect relationship with absolute certainty;
substantial likelihood of the alleged causality meets the test."
Competitive Enter. Insts. v. Nat'l Highway Traffic Safety Admin.,
901 F.2d 107, 113 (D.C. Cir. 1990).  Standing to challenge the
government's regulation of a third party is possible, Nat'l
Wrestling Coaches Ass'n v. Dep't of Educ., 366 F.3d 930, 940
(D.C. Cir. 2004), but when a plaintiff is not the object of a
government action, standing is "substantially more difficult to
establish[.]"  Long Term Care Pharmacy Alliance v. Leavitt, 530
F. Supp. 2d 173, 181 (D.D.C. 2008) (internal quotation marks
omitted).  A plaintiff may satisfy the causation element of
standing by alleging that the challenged government action
"permits or authorizes third-party conduct that would otherwise
be illegal in the absence of the Government's action."  Nat'l
Wrestling Coaches Ass'n, 366 F.3d at 940.

    The Hospitals contend that they are directly injured by the
Secretary's enforcement of § 6085, which requires them to accept
payments at Pennsylvania's FFS rates for EMS and impairs their
ability to negotiate future contracts with MCOs.  (Am. Compl.
¶¶ 102, 105; Pls.' Opp'n at 12, 17.)  The Secretary argues that
the injury is not traceable to a past or imminent action that she
has taken or is about to take, but is instead traceable to a
statute passed by Congress.  (Def.'s Reply Mem. in Support of
Mot. to Dismiss ("Def.'s Reply") at 2.)  The amended complaint

does not explicitly make reference to a specific action by the
Secretary in connection with § 6085 that caused the Hospitals'
injury.  However, in their opposition, the Hospitals attached a
2006 letter to state Medicaid agencies sent by the Director of
CMS, which provided "initial guidance" that "[s]tates must amend
any existing MCO . . . contracts that have provisions governing
payment for emergency services at non-contracting providers that
are inconsistent with the requirements of new section
1932(b)(2)(D) . . . before January 1, 2007." (Pls.' Opp'n, Ex. B
at 1.)  The letter also stated that providers had to "accept [the
FFS rates] as payment in full," and advised that MCOs had to
limit the amount to be paid to non-contracting providers.[4]  (Id.)
The Secretary contends that the letter to state Medicaid agencies
is insufficient to support causation because "[this action is]

---

[4] The Secretary argues that the letter attached to the
Hospitals' opposition should not be considered and that the
Hospitals have changed the nature of their claims.  The complaint
did not explicitly mention the Secretary's letter to state
Medicaid agencies.  However, when a Rule 12(b)(1) motion to
dismiss is filed, a plaintiff's factual allegations must be given
closer scrutiny, and a court is not limited to allegations
contained in the complaint and may consider materials outside the
pleadings.  Powers-Bunce v. District of Columbia, 541 F. Supp. 2d
57, 62 (D.D.C. 2008); see also Nat'l Ass'n of Home Builders, 539
F. Supp. 2d at 337 (stating that a court "may consider the
complaint supplemented by undisputed facts evidenced in the
record").  The Secretary concedes that documents outside the
pleadings can be considered in a ruling on a Rule 12(b)(1)
motion.  (Def.'s Mem. in Opp'n to Pls.' Mot. for Leave to File
Surreply at 4 n.3.)  Moreover, Rule 8 does not require that the
Hospitals plead all facts that are needed to prove a claim and
the complaint does allege that the Secretary is responsible for
the administration and enforcement of Medicaid, including the
changes made by the DRA.  (Am. Compl. ¶ 18.)

-10-

irrelevant to the injury plaintiffs claim to suffer, which flows
directly from § 6085, with or without approval by the Secretary
of any particular MCO contract." (Def.'s Reply at 8.)  The
Hospitals allege that the letter caused the MCOs and Pennsylvania
to modify their contracts to comply with § 6085 and that because
of these changes, the Hospitals must accept the lower rates as
payment in full for EMS not rendered under a contract with an
MCO.  (Pls.' Opp'n at 17.)[5]  Ultimately, it is unnecessary to
resolve whether the causation prong is satisfied because,
regardless of whether the letter contributed to the Hospitals'
financial loss, a favorable decision in this action will not
redress the injury.  See Renal Physicians Ass'n v. U.S. Dep't of
Health & Human Srvcs., 489 F.3d 1267, 1278 (D.C. Cir. 2007)
(explaining that "causation does not inevitably imply
redressability," because there may be instances where

---

[5] The Secretary argues that no applicable waiver of
sovereign immunity permits the suit against the government.
(Def.'s Mem. at 23-25.)  "Absent a waiver, sovereign immunity
shields the Federal Government and its agencies from suit." FDIC
v. Meyer, 510 U.S. 471, 475 (1994).  Congress has waived its
sovereign immunity for suits against government officers seeking
relief other than monetary damages.  5 U.S.C. § 702 ("An action
in a court of the United States seeking relief other than money
damages and stating a claim that an agency or an officer or
employee thereof acted or failed to act . . . shall not be
dismissed on the ground that it is against the United States or
that the United States is an indispensable party.").  Although
Congress enacted this waiver provision in the Administrative
Procedure Act, it is not limited to claims brought under that
Act.  Trudeau v. FTC, 456 F.3d 178, 186 (D.C. Cir. 2006).  The
Hospitals seek a declaratory judgment, not money damages, and the
2006 letter constitutes officer action for the purposes of 5
U.S.C. § 702.

"governmental action is a substantial contributing factor in
bringing about a specific harm, but the undoing of the
governmental action will not undo the harm").

III. REDRESSABILITY

Redressability focuses on the question of whether
plaintiffs' injury would likely be cured if they secured the
relief sought.  Fla. Audubon Soc'y, 94 F.3d at 663-64
("Redressability examines whether the relief sought, assuming
that the court chooses to grant it, will likely alleviate the
particularized injury alleged by the plaintiff.") (footnote
omitted).  A plaintiff does not need to show that the relief
sought would redress the injury completely.  See Shays v. FEC,
414 F.3d 76, 83 (D.C. Cir. 2005).  However, redressability cannot
depend upon the action or discretion of a non-party not before
the court.  See Univ. Med. Ctr. of S. Nev. v. Shalala, 173 F.3d
438, 442 (D.C. Cir. 1999) (stating that even if the plaintiff
prevailed, "it has never explained how, or under what legal
theory, it would be entitled to recover" against non-parties).
"When redress depends on the cooperation of a third party, it
becomes the burden of the [plaintiff] to adduce facts showing
that those choices have been or will be made in such manner as to
produce causation and permit redressability of injury."  US
Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24-25 (D.C.
Cir. 2000) (internal quotation marks omitted).

-12-

The Hospitals present several different theories of redressability.[6]  First, the Hospitals argue that declaring § 6085 unconstitutional as applied and enjoining the Secretary's enforcement of the section would eliminate the preemptive effect of § 6085 on Pennsylvania law, restoring the *status quo ante* in which the MCOs were contractually obligated to pay the Hospitals at the higher rates prescribed by Pennsylvania law.  (Pls.' Surreply at 3-4.)  Second, the Hospitals argue that because § 6085 prohibits the Hospitals themselves from charging the MCOs at the higher Pennsylvania rates, a favorable judgment would redress an injury by removing a procedural impediment to the Hospitals' ability to pursue claims against the MCOs.  (Pls.' Supp. Mem. 6-9.)  Third, the Hospitals argue that the declaratory and injunctive relief sought will improve the Hospitals' "bargaining leverage" by decreasing the likelihood that the MCOs will rely on § 6085 to avoid negotiating case-specific agreements with the Hospitals.  (Pls.' Supp. Mem. at 12-15.)  Each of these theories is flawed.

A.   Effect on the MCOs' contractual obligations

The Hospitals maintain that "MCOs have been expressly contractually bound as a condition of serving in the [Pennsylvania Medicaid program] to pay for non-contracted EMS at

---

[6] Supplemental briefing was ordered on the specific question of redressability.  Citations generally refer to the parties' most recent arguments, which elaborate rather than replace the discussions of redressability in earlier briefing.

-13-

the rates prescribed by Act 68 (40 P.S. § 991.2116), 'but for'
§ 6085." (Pls.' Surreply at 3.) Following a declaratory
judgment in the Hospitals' favor, the Hospitals contend that the
Pennsylvania statute that governs reimbursement for EMS, which
requires MCOs to pay "all reasonably necessary costs[,]" 40 Pa.
Cons. Stat. § 991.2116, will provide the controlling law for
MCOs' payments. Consequently, the Hospitals argue that the MCOs
will pay them in accordance with Pennsylvania law after § 6085
is declared unlawful because to do otherwise would violate the
terms of the MCOs' state contracts. (Pls.' Surreply at 4.) See
also Pls.' Opp'n at 17 (arguing that the Hospitals "automatically
would be entitled upon the entry of a favorable judgment in this
case to reimbursement for EMS from non-contracted Medicaid MCOs
at the much higher rates prescribed by Pennsylvania Act 68").
Neither declaratory nor injunctive relief in this case, however,
would ensure or make likely that the MCOs would behave in the
manner the Hospitals assume.

     Because § 6085 is a statutory provision enacted by Congress,
not a regulation adopted by the Secretary or her department, a
judgment in this case declaring it unconstitutional and enjoining
the Secretary from "enforcing" it (Am. Compl. at 31) will not
effect any change in federal Medicaid law that could bind non-
parties.[7] That this action challenges a federal statutory

_____

     [7] The preemptive effect of § 6085 does not depend on any
enforcement action by the Secretary. Although the Hospitals

-14-

provision distinguishes the instant case from others in which courts found injuries stemming from non-party conduct to be redressable by a judgment against the head of a government agency.  In Nat'l Wrestling Coaches Ass'n, the D.C. Circuit identified a category of cases in which courts find plaintiffs' injuries from third parties redressable in actions against an agency because the "government action . . . permits or authorizes third-party conduct that would otherwise be illegal in the absence of the Government's action."  366 F.3d at 940.  The meaning of this principle is elucidated only by reference to the cases the court actually identified as falling within the category, each of which involved a challenge to agency rule-making or agency adjudication that affected, and effectively bound, the third-parties.  Id. at 940 (citing cases).  In one case, Animal Legal Def. Fund, Inc v. Glickman, 154 F.3d 426 (D.C. Cir. 1998) (en banc), for example, the D.C. Circuit considered a suit brought by animal welfare activists challenging Department of Agriculture regulations that applied to third party dealers,

referred to the notice from the Director of CMS advising State Medicaid Directors of the enactment of the section and the need to update MCO contracts (Pls.' Opp'n at 10-11, Ex. B), the notification merely provided preliminary "guidance" on the statutory requirements and did not itself purport to give those requirements legal force.  In addition, while the Secretary must approve prepaid contracts between the states and MCOs in certain circumstances, ensuring their compliance with the default rate provision, see 42 U.S.C. 1396b(m)(2)(A)(iii) and (xii), § 6085's requirement that the Hospitals accept the FFS rates operates irrespective of the Secretary's approval of any given contracts.

exhibitors, and research facilities.  The court held that the plaintiffs' aesthetic injury, which arose from observing animals held in inhumane conditions at the third parties' facilities, could be redressed by a favorable judgment directing the agency to adopt more stringent rules to regulate the non-parties at issue.  Id. at 443-44; see also Banner Health v. Sebelius, 797 F. Supp. 2d 97 (D.D.C. 2011) (finding that Medicare providers' standing to challenge Health and Human Services Secretary's promulgation of outlier payment regulations, fixed loss threshold regulations, and her determinations as to the amount of outlier payments was self-evident because the plaintiffs were the object of agency's own rule-making and adjudication).  By contrast, this case challenges a statutory provision that imposes requirements on third parties irrespective of actions of the Secretary or her agency.  The MCOs' contractual obligations, which depend on the statute, will not be altered by a judgment against the Secretary where the MCOs are not themselves parties to this action.

The recent case of LaRoque v. Holder, 650 F.3d 777 (D.C. Cir. 2011), addressed by the parties in supplemental briefing, does not support the Hospitals' contention that a declaratory judgment in the instant case would void § 6085 for the MCOs or for the State of Pennsylvania.  In LaRoque, voters and a citizen's group challenged the United States Attorney General's refusal to pre-clear under Section 5 of the Voting Rights Act a

jurisdiction's proposed amendment to its election system and
argued that Section 5 is unconstitutional.  Absent the Attorney
General's objection, the proposed amendment would have taken
effect.  The D.C. Circuit found that the plaintiffs' injury could
be redressed by a favorable decision, because if Section 5 were
found unconstitutional, the Attorney General's actions under that
statute would be rendered void.  Id. at 790-91.  The Hospitals
contend that LaRoque compels the result that the constitutional
claims in the instant case are redressable because a favorable
decision will void § 6085.  (Pls.' Reply to Def.'s Supp. Mem. at
2-5.)  The D.C. Circuit's decision, however, depended on the
unique structure of Section 5, a statutory provision that
"provides that 'no person shall be denied the right to vote for
failure to comply' with a new electoral law 'unless and until'
the law is precleared by either the Attorney General or the
District Court for the District of Columbia."  LaRoque, 650 F.3d
at 790 (quoting 42 U.S.C. § 1973c(a)).  The operation of Section
5 therefore expressly requires action by the Attorney General, or
by the district court.  Placed in this factual context, the
LaRoque plaintiffs' injuries were "fairly traceable to the
Attorney General's insistence on enforcing section 5's
preclearance requirement[,]" id. at 789, and a declaratory
judgment that Section 5 is unconstitutional, voiding the action
of Attorney General, would redress those injuries.

-17-

Unlike Section 5, the operation of § 6085 does not hinge on any action of the Secretary.  See 42 U.S.C. § 1396u-2(b)(2)(D); supra at 3 (quoting the statutory language).  Here, a declaratory judgment and injunction against the Secretary will not preclude the MCOs from relying on § 6085 to pay the Hospitals in accordance with the federal default rate or from re-litigating the issue in a suit against the Hospitals.  In Taylor v. Sturgell, the Supreme Court reaffirmed the general rule against nonparty preclusion, reasoning that because "[a] person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit[,]" a non-party is not prevented, by claim or issue preclusion, from having "his own day in court."  Taylor v. Sturgell, 553 U.S. 880, 892-93 (2008) (quoting Richards v. Jefferson County, 517 U.S. 793, 798 (1996)).  The Court also recognized several exceptions to the general rule, and the Hospitals argued in supplemental briefing that the MCOs would be precluded from relitigating the constitutionality of § 6085 under the exceptions permitting a non-party to be bound by a judgment where the non-party's interests were "adequately represented" by a party to the suit, Taylor, 553 U.S. at 894 (quoting Richards, 517 U.S. at 798) and where the non-party "'assume[d] control' over the litigation in which th[e] judgment was rendered," id. at 895 (quoting Montana v. United States, 440 U.S. 147, 154 (1979)).

-18-

The Taylor Court, however, construed both of these
exceptions narrowly, and neither applies here.  The Secretary
does not adequately represent the MCOs' interests because there
is no evidence that she defends this suit in a "representative
capacity" on behalf of the MCOs and because there are in place no
"special procedures to protect the nonparties' interests[.]"  Id.
at 897; see also Holland v. Nat'l Mining Ass'n, 309 F.3d 808, 814
(D.C. Cir. 2002) (finding no adequate representation of private
parties' interests in a prior suit against an agency to determine
statutorily required payment to those parties because they "ha[d]
a monetary incentive to adopt a statutory interpretation that
will maximize [their] revenues" while agency "must act
impartially and does not have a monetary incentive to adopt a
particular statutory interpretation").  Further, preclusion based
on assumption of control over the litigation requires that a
party litigate an action for the non-party's benefit and at the
non-party's direction.  Montana, 440 U.S. at 154.  In Montana,
the Supreme Court held the United States was precluded from
relitigating the constitutionality of a state tax where it had
assumed control of a prior constitutional challenge brought by a
government contractor.  The Court based its holding on findings
that the United States had required the contractor to file suit,
reviewed and approved the complaint, and paid the attorneys' fees
and costs, among other efforts.  Id. at 155.  The Hospitals have

neither alleged nor provided evidence of the MCOs' involvement in the instant litigation, and the Hospitals' contention that "§ 6085 was enacted at the instigation and for exclusive financial benefit of Medicaid MCOs" (Pls.' Reply to Defs.' Supp. Mem. at 7) is insufficient to support a reasonable inference that the MCOs have assumed or may assume control of the litigation.

In the absence of enjoinable agency action or preclusive effect, this is not a case where non-parties could only continue to rely on § 6085 after it was declared unconstitutional if they "took the extraordinary measure of continuing their injurious conduct in violation of the law." Nat'l Wrestling Coaches Ass'n, 366 F.3d at 941.  Because the MCOs are not parties to this action, a judgment for the Hospitals will not bind them.  The Hospitals' failure to sue or join the MCOs thus is fatal to the redressability of this action.  Cf. Duke Power Co. v. Carolina Envtl. Study Group, 438 U.S. 59, 75-78 (1978) (finding redressability requirement satisfied in suit challenging constitutionality of Price-Anderson Act, which limited liability of federally licensed power plants for nuclear accidents, where plaintiff citizens groups and interested individuals sued *both* the Nuclear Regulatory Commission *and* the utility company whose liability the Act limited).  Moreover, for the reasons that are discussed below, the redressability requirement is not met if the present suit serves only to produce a judgment that could be

marshaled against the MCOs in subsequent litigation or that could have a favorable impact upon the Hospitals' future negotiations with those parties.[8]

B.   The Hospitals' ability to pursue claims against MCOs

Alternatively, the Hospitals contend that their claims are redressable because § 6085 regulates the Hospitals' own conduct, limiting what they can collect from MCOs.  (Pls.' Supp. Mem. at 3.)  According to the Hospitals, regardless of whether the MCOs are bound by a favorable decision in this case, such a decision would free the Hospitals to seek higher payments from the MCOs.[9]

---

[8] In their surreply, the Hospitals argue that absolute certainty of recovery from the MCOs is not necessary to satisfy the redressability requirement of standing.  See Pls.' Surreply at 1-2 ("The standard is not whether all MCOs will be absolutely bound by a judgment to pay plaintiffs in accordance with controlling state law if § 6085 is enjoined, but whether it is more likely than not that they will do so.").  It is true that absolute certainty is not required.  However, the probability that the MCOs would voluntarily cease reliance on § 6085 is distinctly low.  The MCOs have a substantial competing interest concerning the application of § 6085, which allows them to pay lower rates for EMS.  Cf. Abigail Alliance for Better Access to Developmental Drugs v. Eschenbach, 469 F.3d 129, 135 (D.C. Cir. 2006) (reasoning that redressability was not speculative because, unlike a situation where third-parties had no inclination to act, the drug companies at issue had "pecuniary interests" to provide the relief the plaintiffs desired "if the [defendant] FDA allow[ed] them" to).  The Hospitals have provided no evidence of the MCOs' inclination to act contrary to these clear financial interests.  Cf. Emergency Coal. to Defend Educ. Travel v. U.S. Dep't of the Treasury, 545 F.3d 4, 11 (D.C. Cir. 2008) (finding redressability where plaintiffs provided a letter from third party stating that it planned to remedy the injury once the regulatory obstacles were moved).

[9] The Hospitals cite Idaho Power Co. v. FERC, 312 F.3d 454 (D.C. Cir. 2002) for the broad proposition that a party has "presumptive standing to challenge a law that directly regulates

-21-

The complaint thus contemplates future suits against the MCOs, stating that "unless the application of the DRA Default Rate Provision is enjoined as to Plaintiffs, Plaintiffs will have no way to assert and preserve claims against MCOs for amounts in excess of the confiscatory rates imposed by § 6085." (Am. Compl. ¶ 104.) The requested relief would allegedly allow the Hospitals to pursue their claims against the MCOs and to avoid "potential criminal liability and exclusion from Medicare and Medicaid." (Id.) However, the two-step process of obtaining a declaratory judgment and then suing a non-party for payment does not satisfy redressability. In University Medical Center, for example, where a hospital sought a declaratory judgment against the Secretary to be deemed eligible to receive discounts on drug prices, the D.C. Circuit held that the hospital failed to demonstrate that the injury from its loss of past discounts was redressable because there was no guarantee that drug manufacturers would apply the discounts retroactively and the hospital likely would have to

---

its own conduct." (Pls.' Supp. Mem. at 5.) The Idaho Power case addressed an electric utility's petition for review of an agency's orders based on the agency's interpretations of its rules. The court's observation that it was "inconceivable that Idaho Power could be subjected to a [Federal Energy Regulatory Commission] order requiring it to enter into a specific contract concerning the use of its property but lack standing to challenge that order," Idaho Power, 312 F.3d at 461, must be read in the factual context of that case. Because the Hospitals challenge the constitutionality of a statute -- rather than allege arbitrary and capricious action by the Secretary that may be remedied by the Secretary -- the Idaho Power decision's reasoning is inapposite here.

-22-

initiate a second suit against the drug manufacturers to receive
the desired relief.  Univ. Med. Ctr. of S. Nev., 173 F.3d at 441-
42.  The court viewed this as a "concession" that the claim was
not redressable because "[r]edressability must be satisfied *now*
to establish jurisdiction."  Id. at 442 (emphasis in original).[10]
See also Comite de Apoyo a los Trabajadores Agricolas v. U.S.
Dep't of Labor, 995 F.2d 510, 514 (4th Cir. 1993) (finding no
standing because the plaintiff's requested relief against the
defendant would not bind a non-party and any decision by the
court would be advisory in future litigation); Bates v. Rumsfeld,
271 F. Supp. 2d 54, 64 (D.D.C. 2002) (finding that the
plaintiff's claim was not redressable because he sought a
favorable declaration from the court in order to later challenge

---

[10] In University Medical Center, the D.C. Circuit noted that
"[i]f it could be said that [plaintiff] was *legally entitled* to
get the discounts [from the third-party drug manufacturers], then
we might have a different situation," in which the Court would be
"force[d] . . . to ask how likely it was that appellant would
succeed in the second suit."  173 F.3d at 442.  The Hospitals
rely on this reasoning for the proposition that, because
Pennsylvania law supplies a contingent legal right entitling them
to payment from the MCOs at higher rates, the ultimate redress of
their injuries is not in question.  (Pls.' Supp. Mem. at 18-19.)
The Hospitals' argument, however, relies on the mistaken
contention, rejected above, that a declaratory judgment would
void § 6085 for all purposes.  Moreover, the D.C. Circuit's
expression that it *might* look at the likelihood of success in
subsequent litigation as a measure of redressability was dictum
not necessary to the holding of the case.  Notably, the court
also stated that it was "not aware of a case that presents that
situation," but was "inclined to think that a plaintiff should
bring in parties like the drug manufacturers as third-party
defendants."  Univ. Med. Ctr. of S. Nev., 173 F.3d at 442.

a military sanction which could be imposed in the independent
judgment of the military).  A court opinion must resolve the
issue before it, not "merely determine a collateral issue
governing certain aspects of . . . pending or future suits" to be
justiciable.  <u>Calderon v. Ashmus</u>, 523 U.S. 740, 747 (1998).

The Hospitals contend that the two-step process is necessary
because they are faced with the dilemma of either accepting lower
payments from the MCOs or facing criminal penalties -- for
billing the MCOs at the higher billing rates than would have been
permissible but for § 6085 -- under § 1128B of the Act.  (Pl.'s
Opp'n at 14-16.)  That section provides that whoever knowingly
and willfully charges for services provided to an individual
enrolled with an MCO at a rate in excess of that permitted by the
contract shall be guilty of a felony.  42 U.S.C. § 1320a-7b(d).
In support of their contention, the Hospitals cite <u>Abbott Labs v.
Gardner</u>, 387 U.S. 136 (1967), where drug companies brought a pre-
enforcement action to challenge FDA labeling regulations,
defiance of which carried criminal penalties.  Unlike this case,
<u>Abbott Labs</u> was a challenge to an agency's regulations, raising
claims which clearly were redressable in a suit against the
agency head.  <u>See</u> <u>id.</u> at 154 (noting there was "no question in
the present case that petitioners have sufficient standing").
Moreover, the Hospitals do not need to subject themselves to
potential criminal liability by charging the MCOs excessive

payments in order to pursue claims against them.  The Hospitals

may initiate a suit directly against the MCOs for a declaratory

judgment that the statute is unconstitutional and an injunction

requiring payment in accordance with Pennsylvania rather than

federal law.  Proceeding in that fashion would enable resolution

of the Hospitals' claims against the MCOs, and redressability of

their injuries, in one suit.[11]

---

[11] Moreover, "[w]here a plaintiff has yet to face
prosecution under a statute he seeks to challenge, the Supreme
Court . . . requires that he establish Article III standing by
(1) 'alleg[ing] an intention to engage in a course of conduct
arguably affected with a constitutional interest, but proscribed
by a statute," and (2) demonstrating that 'there exists a
credible threat of prosecution thereunder.'" Ord v. District of
Columbia, 587 F.3d 1136, 1140 (D.C. Cir. 2009) (quoting Babbitt
v. United Farm Workers, 442 U.S. 289, 298 (1979)).  The D.C.
Circuit further requires that the plaintiff prove not only that
the threat is credible, but also that it is imminent, that is,
that the potential prosecution "results from a special law
enforcement priority," id. at 1141, or that the plaintiff has
been "singled out or uniquely targeted" for prosecution, Parker
v. District of Columbia, 478 F.3d 370, 375 (D.C. Cir. 2007).  The
Hospitals do not argue that they meet this standard but rather
contend that the standard is inapplicable because they are
challenging the constitutionality of § 6085, not the
constitutionality of the criminal provisions under § 1128B.
(Pl.'s Mem. at 16-17 n.17.)  The Hospitals, however, specifically
seek to enjoin the Secretary from enforcing the statute against
them and cite no other mechanism for her doing so besides the
criminal provision.  They therefore must demonstrate that
prosecution is distinctly credible and imminent in order to
establish standing on that ground.

-25-

C.   <u>Effect on the Hospitals' bargaining power</u>

Finally, the Hospitals argue that this suit will redress their injuries because a judgment that § 6085 is unconstitutional will reduce the MCOs' reliance on the provision to avoid negotiating case-specific agreements with the Hospitals, thereby improving the Hospitals' "bargaining leverage." (Pls.' Supp. Mem. at 12-15; Am. Compl. ¶¶ 109-111.)  Even assuming that the Hospitals' alleged injury of a weakened contract bargaining position with the MCOs is sufficient to constitute a concrete and particularized injury for standing purposes, this injury is not redressable.  It is speculation to assert that the requested relief would have any effect on future contract negotiations that are within the complete discretion of the MCOs and can be influenced by other factors not within the court's control. Redressability cannot rest on "the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict." <u>US Ecology, Inc.</u>, 231 F.3d at 24 (internal quotation marks omitted).  Article III limits federal courts to adjudicating cases and controversies and prohibits them from issuing advisory opinions.  The redressability requirement is not met where a decision favorable to the Hospitals would not resolve their right to payment from the MCOs but merely put pressure on the MCOs to negotiate contracts beneficial to

-26-

Hospitals because the MCOs *might* believe that separate litigation *might* result in another decision favorable to the Hospitals.

## CONCLUSION

In sum, the Hospitals have not demonstrated that a favorable decision would redress their injury, through either the decision's affect on the MCO's contractual obligations, on the Hospitals' ability to pursue claims against the MCOs, or on the Hospitals' bargaining leverage vis-à-vis the MCOs. Because the Hospitals therefore do not have standing, the court lacks subject matter jurisdiction, and the Secretary's motion to dismiss will be granted. A separate Order accompanies this Memorandum Opinion.

SIGNED this 29th day of March, 2012.

_____/s/_____
RICHARD W. ROBERTS
United States District Judge